ACCEPTED
06-14-0041-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/2/2015 12:13:32 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

| | | |
|---|---|---|
| **JAMEY JUSTIN SMITH,** APPELLANT | § § § | FILED IN 6th COURT OF APPEALS TEXARKANA, TEXAS 2/3/2015 12:13:32 PM DEBBIE AUTREY Clerk |
| v. | § § | **Nos. 06-14-00041-CR** |
| | § | **06-14-00042-CR** |
| **THE STATE OF TEXAS,** APPELLEE | § § § § | |

_____

## STATE'S BRIEF

_____

FROM THE 196TH DISTRICT COURT
HUNT COUNTY, TEXAS

TRIAL CAUSE NUMBERS 28,911 & 28,912
THE HONORABLE STEPHEN R. TITTLE, JR., JUDGE PRESIDING

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**KELI M. AIKEN**
First Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX 75403
kaiken@huntcounty.net
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

**IF COURT GRANTS**
**APPELLANT'S REQUEST FOR**
**ORAL ARGUMENT THEN**
**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

INDEX OF AUTHORITIES .......................................................................... ii

SUMMARY OF THE STATE'S ARGUMENTS ................................................2–4

STATE'S RESPONSE TO POINTS OF ERROR ONE THROUGH SIX ..........5–18
The trial court properly found that Appellant exercised his peremptory challenges based on discriminatory intent to keep females from serving on the jury.

STATE'S RESPONSE TO POINT OF ERROR SEVEN ................................ 18–22
Neither the parties, nor the trial court viewed the documents marked as Appeal Defense Exhibit 2; therefore, Appellant's counsel could not have made any argument based off those documents and did not commit ineffective assistance of counsel

PRAYER AND CERTIFICATES ............................................................... 23–254

# INDEX OF AUTHORITIES

Federal Cases

*Batson v. Kentucky*, 476 U.S. 79 (1986)...............................................................................5

*J.E.B. v. Alabama*, 511 U.S. 27 (1994)................................................................................5

*Kimmelan v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed. 305 (1986)..........17

*Synder v. La.*, 552 U.S. 472 (2008)......................................................................................5

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, (1984).................... 17–18

State Cases

*Batiste v. State*, 888 S.W.2d 9 (Tex. Crim. App. 1994)..............................................5

*Blott v. State*, 588 S.W.2d 588 (Tex. Crim. App. 1979)...........................................5

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010)..........................................5

*Gibson v. State*, 144 S.W.3d 530 (Tex. Crim. App. 2004)....................................5–6

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App.1986)...................................17

*Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998).....................................17

*Johnson v. State*, 959 S.W.2d 230 (Tex. App.—Dallas 1997)...............................17

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999)....................................17

**IN THE COURT OF APPEALS FOR THE**
**SIXTH DISTRICT OF TEXAS AT TEXARKANA**

| | | |
|---|---|---|
| **JAMEY JUSTIN SMITH,** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **Nos. 06-14-00041-CR** |
| | § | **06-14-00042-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

_____

**STATE'S BRIEF**

_____


TO THE HONORABLE COURT OF APPEALS:

NOW COMES the State of Texas, Appellee, in this appeal from Cause Nos. 28,911 & 28,912 in the 196th Judicial District Court in and for Hunt County, Texas, Honorable Stephen R. Tittle, Jr., Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Court in support of the judgment of sentence in the court below.

1

## SUMMARY OF THE STATE'S ARGUMENTS

The trial court properly found that Appellant purposefully discriminated against six female venire members in this case when he used his peremptory strikes based on gender. The State presented a prima facie showing that Appellant used eight peremptory strikes to prevent female venire members from serving on the jury. Appellant presented his reasons for exercising peremptory strikes and the trial court found the excuses were a pretext to strike women from the prospective jury. After reviewing the voir dire, jury cards/questionnaires, arguments by both sides and the court's record, the trial court found that Appellant purposefully discriminated against six venire members and reinstated them to the panel. As Appellant used his peremptory strikes to intentionally discriminate against prospective jurors on the basis of gender, the trial court correctly upheld the State's *Batson* challenge and reinstated those panel members.

Neither the trial court nor the parties viewed the documents marked as Appeal Defense Exhibit 2 from the Supplemental Reporter's Record. In fact those documents were not in the reporter's record at trial. As Appellant's trial counsel never saw the document where venire member 35 wrote that her sister was a prior sexual assault victim, he did not use that statement as a basis for exercising his peremptory strikes and did not repeat it as a gender neutral reason. The "questionnaires" that the trial court and parties used in making strikes and during

the *Batson* argument are now Trial Defense Exhibit 1 after the supplemental hearing and order issued by Judge Leonard in October 2014.

At trial both parties equally gave up the right to review the items marked as Appeal Defense Exhibit 2. The items were not provided to either attorney prior to exercising peremptory strikes and once the oversight was discovered both parties agreed not to even read the documents. As both the State and Defense equally gave up any opportunity to review the documents and search for any information that might have benefited the parties or contributed to their use of strikes in this case, there was no error. Furthermore, trial counsel made an informed strategic decision to not use or review the documents in Appeal Defense Exhibit 2.

Appellant's trial counsel provided the reasons he used his peremptory strike against venire member 35. The reasons were: 1) that she served on prior criminal juries and reached a verdict; 2) she was from Quinlan and 3) that he thought the prosecutor knew her. RR3/89, lines 6–16. Appellant's counsel saw the venire member during jury selection and heard her answers to the questions proposed by the trial court and the parties. He knew she agreed to act as a fair and impartial juror in the case and she did not state at any time that her sister's prior experience would affect her ability to follow the law and be a fair and impartial juror in this case. There is nothing in the record to show Appellant's trial counsel's performance was deficient nor that the outcome of the trial would have been any

different; therefore, Appellant cannot show that he received ineffective assistance of counsel in this case.

As this was a punishment trial, the State requests that the Court affirm both of Appellant's sentences.

**STATE'S RESPONSE TO POINTS OF ERROR ONE THROUGH SIX**

**The trial court properly found that Appellant exercised his peremptory challenges based on discriminatory intent to keep females from serving on the jury.**

**Argument and Authorities**

The use of peremptory challenges is limited by the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). No one may use a exercise a peremptory strike solely on the basis of a venire member's gender. *J.E.B. v. Alabama*, 511 U.S. 27, 142–143 (1994); *Batiste v. State*, 888 S.W.2d 9, 11–12 (Tex. Crim. App. 1994). Both parties are subject to a *Batson* challenge. *Georgia v. McCollum*, 505 U.S. 42, 55–60 (1992).

Based upon *Batson*, there is a three step process courts should use to determine if a peremptory strike was based on gender: 1) the challenging party must make a prima facie showing that the peremptory strike was exercised based upon gender; 2) the proponent has the opportunity to present a gender neutral reason for striking the venire member; and 3) the trial court determines if the challenging party has shown "purposeful discrimination." *Snyder v. La*, 552 U.S. 472, 477 (2008). *Davis v. State*, 313 S.W.3d, 325 (Tex. Crim. App. 2010).

A trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder v. La*, 552 U.S. at 477; *Davis v. State*, 313 S.W.3d at 325. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). A

trial court's decision regarding discriminatory intent is "pivotal" because the best evidence to determine discriminatory intent is often the demeanor of the venire members and/or the proposing counsel.  *Id*.  The trial court is best situated to observe the demeanor of the parties and venire members and decide if the gender neutral reasons provided are valid or simply a pretext for purposeful discrimination.  *Id*.

> **A.   The State presented its prima facie showing that Appellant used eight peremptory strikes to prevent female venire members from serving on the jury.**

The State explained to the trial court that starting with the first juror remaining in the panel, it was clear from the peremptory strikes exercised by Appellant that he purposefully struck women over the age of forty in order to prevent them from serving on the jury panel.  RR3/90/lines 7-21.  The State further explained that it was watching for purposeful discrimination because the Appellant had previously struck women in a prior jury selection for this case that resulted in a mistrial (without prejudice) the week before. *Id*. 28,911/CR1/60–75. 28,912/CR1/63–78. *See also* Supplemental Clerk's Record in both cases.  As a result that panel consisted of nine men and four women including the alternate juror.  *Id*.  Finally, neither the status of the cases nor the issues had changed from January 27th to February 3rd so there was no reason to believe Appellant would

6

have any reason to use a different strategy to pick the second jury. 28,911/CR1/6–9 and 28,912/CR1/6–8.

**B. Appellant's gender neutral reason for striking six of the female jurors were a pretext in order to keep women off the jury.**

The trial court gave Appellant's counsel an opportunity to present gender neutral reasons as to why Appellant exercised a peremptory strike against each challenged venire member. At first, trial counsel explained that the peremptory strikes were not utilized based on gender but because of how the jurors responded to Appellant's counsel's questions or their inattentiveness. RR3/86, lines 10–14. Trial counsel then offered neutral reasons for striking each individual venire member.

**1. Appellant's proffered neutral reasons for striking Venire Member 5 were pretextual in that he did not strike all members who worked in the health care profession.**

Appellant first stated that he used a peremptory against venire member 5 because she worked in the health care and rehabilitation field. RR3/87, lines 2–5. Appellant claimed that with a sexual assault nurse examiner (SANE) testifying at trial he felt it prudent to strike all venire members who worked in this field. *Id*; RR3/93, lines 3–5. The State responded that venire member 5 was a fifty-two year old female and that her employment in the rehabilitation and health care field would likely benefit Appellant in the punishment phase of the trial where he tried

7

to explain the basis for his behavior and present defenses, reasons or mitigation in hopes of a lesser sentence. RR3/92, lines 5–16. Furthermore, venire member 5 currently works at Walmart and is no longer employed in the health care field. RR3/92, lines 21–23.

The trial court also had the testimony of the venire members from February 3, 2014 to consider. Venire member 27 stated on the record that she actually knew the witness SANE Linda Bell who was testifying. RR3/57–58. Certainly that would have been more relevant than another panel member who worked in a similar field. However, Appellant's trial counsel did not use his peremptory strike against venire member 27 based on her knowledge or relationship with SANE Linda Bell. RR3/97, lines 5–7.

As proof that Appellant's claim of striking venire member 5 because of her employment in the health care field is pretextual the trial court had before it the jury cards/questionnaires from the February 3, 2014 panel. 28,911/CR1/63–78. 28,912/CR1/93–98. *See also* Supplemental Clerk's Record in both cases. Venire member 49 was a registered nurse and Appellant did not use a peremptory strike against her yet she was within the strike zone. *Id*. Furthermore, venire member 56 was a counselor in the health care profession and in the strike zone, yet Appellant did not strike her. *Id*. Finally, venire member 58 was a surgical technician within the strike zone and Appellant did not strike her. *Id*.

As further proof that Appellant's excuse for striking venire member 5 because of her employment in the health care field is pretextual the trial court had the jury cards/questionnaires from the venire panel in this case on January 27, 2014. 28,911/CR1/60–75. 28,912/CR1/63–78; Trial Defense Exhibit 1[1]; *See also* Supplemental Clerk's Record in both cases. Juror 5 on that panel (venire member 18) was a registered nurse and not only did Appellant not strike her but she was seated on the jury panel. *Id*. Also Juror 9 (venire member 32) was a registered nurse yet Appellant did not strike him and he was seated on the jury panel. *Id*. Juror 11 (venire member 35) was also retired from the Department of Health and Human Services but Appellant did not strike him and he was seated on the jury panel. *Id*. The additional members of the venire panel were in the strike zone and employed in the health care profession but not struck by Appellant: 1) venire member 5 and 2) venire member 11 – a social worker who handled hospice care. *Id*.

Next, Appellant claimed that Venire Member 5's eye contact and head shaking in response to Appellant' counsel's voir dire was a reason he struck her from the panel. RR3/87, lines 2–5. The trial court was present during jury selection and witnessed the responses and demeanor of venire member 5 and by his

---

[1] Trial Defense Exhibit 1 are the jury cards/questionnaires offered at trial. These were corrected as part of the Supplemental Reporter's Record dated October 2014 and Judge Leonard's corresponding order.

ruling of purposeful discrimination found this reason to be a pretext. *See infra* Section C.

> **2. Appellant's proffered neutral reasons for striking Venire Member 8 were pretextual in that he did not strike all members who worked in the health care profession nor did he strike all members with family in law enforcement.**

Appellant stated that he exercised a peremptory strike against venire member 8 because she had a cousin who worked for Greenville Police Department. RR3/87, line 14. The State established that venire member 8 was a thirty-seven year old female and this case did not involve any Greenville Police Department officers and argued that this reason was a pretext to strike the venire member because of her gender. RR3/94, lines 1–2.

As proof that Appellant's claim of striking venire member 8 because her cousin works in law enforcement is pretextual- the trial court had before it the jury cards/questionnaires from the February 3, 2014 panel. 28,911/CR1/63–78. 28,912/CR1/93–98. *See also* Supplemental Clerk's Record in both cases. The following venire members served on the jury yet Appellant did not exercise peremptory strikes against them and each had family who worked in law enforcement: 1) venire member 6; 2) venire member 19; and 3) venire member 33. *Id*. The following members of the venire panel were within strike zone and either had family in law enforcement or worked in law enforcement themselves yet

Appellant did not strike them: 1) venire member 53; 2) venire member 54; 3) venire member 55; 4) venire member 56; and 5) venire member 57. *Id.*

As further proof that Appellant's excuse for striking venire member 5 because her cousin works in law enforcement is pretextual- the trial court had the jury cards/questionnaires from the venire panel in this case on January 27, 2014. 28,911/CR1/60–75. 28,912/CR1/63–78; Trial Defense Exhibit 1. *See also* Supplemental Clerk's Record in both cases. Both venire members 3 and 7 served on the jury panel and each had family members in law enforcement but were not struck by Appellant. *Id.* Venire member 46 was within the strike zone, had a brother who worked as a police officer, and was not struck by Appellant. *Id.*

Next Appellant claimed he struck venire member 8 because she was a member of the health care profession and "she's in the health field with dialysis.". RR3/87, line 14. The State established that venire member 8 was a thirty-seven year old woman who worked as a registered nurse handling dialysis and end of life care. RR3/83, lines 13–22. This trial did not involve any discussions of end of life measures nor of dialysis and the State argued that this peremptory strike was used in a discriminatory way to prevent venire member 8 from serving on the jury because of her gender. *Id.*

The State has previously shown that Appellant's claim of striking venire member 8 because of her employment in the health care field is pretextual. *Supra* Section B(1).

**3. Appellant's proffered neutral reason for striking Venire Member 15 was clearly pretextual when given the chance to verify that she was the individual he was speaking about, counsel chose not to ask her any questions.**

The reason Appellant claimed to exercise a peremptory strike against venire member 15 was that: 1) she had a reputation for sheltering animals and would hang anyone who abused animals; 2) Appellant's counsel thought he or his wife might have donated money to her in the past to help shelter animals; and 3) Appellant's counsel thought she might not make a very good juror. RR3/87–88. When the State challenged that the venire member 15 was a sixty-nine year old female who did not even know Appellant's counsel based on her answers at voir dire, Appellant qualified his response with the statement that trial counsel did not even know if she was the same person he referred to. RR3/59–60 and 95, lines 20–21. When given the opportunity to ask the venire member questions to establish if she was this person, Appellant's trial counsel declined. RR3/95, lines 20–21.

**4. Appellant's proffered neutral reasons for striking Venire Member 35 were pretextual in that he did not strike all members who lived in Quinlan nor did he strike all members who had prior jury service.**

12

At first Appellant counsel stated that he struck venire member 35 because he felt like the prosecutor knew her. RR3/89, lines 1–6. The State explained that they did not know this venire member. RR3/89, lines 1–6. In fact, the attorney representing the State identified all the panel members they knew and none of the jurors who served in this case knew the State, the victim, Appellant or his counsel. RR3/59–60; 28,911/CR1/78. 28,912/CR1/98. Furthermore, when asked by both the trial court and counsel if any of the panel members knew anything about this case, venire member 35 did not raise her hand or indicate in any way she knew any information about this case. RR3/28–29 and 59–60.

Next Appellant explained that venire member 35 was struck because she lived in Quinlan, the town where the offense occurred. RR3/89/lines 6–16. The State argued that when the panel was addressed, this venire member did not state that she knew the parties, victim, or any information about the case. RR3/28–29 and 59–60.

As proof that Appellant's claim of striking venire member 35 because she lived in Quinlan was pretextual- the trial court had before it the jury cards/questionnaires from the February 3, 2014 panel. 28,911/CR1/63–78. 28,912/CR1/93–98. *See also* Supplemental Clerk's Record in both cases. *Id*. Venire member 19 lives in Quinlan and served on this jury without any strike or

objection by Appellant. Venire member 55 also lived in Quinlan and was not struck by Appellant. *Id*.

As further proof that Appellant's excuse for striking venire member 35 because she lives in Quinlan was pretextual- the trial court had the jury cards/questionnaires from the venire panel in this case on January 27, 2014. 28,911/CR1/60–75. 28,912/CR1/63–78; *See also* Supplemental Clerk's Record in both cases. The following venire members lived in Quinlan and were seated as jurors without being struck by Appellant: 1) venire member 6; 2) venire member 24; and 3) venire member 30. *Id*.

Appellant's final reason for striking venire member 35 was that she had served on criminal juries before and reached a verdict. RR3/89, lines 6–16. The State established that venire member 35 was a sixty-six year old female and asserted that Appellant used a strike against her to keep another female off the jury. RR3/97, lines 9–25.

As proof that Appellant's claim of striking venire member 35 because she previously served on a jury was pretextual- the trial court had before it the jury cards/questionnaires from the February 3, 2014 panel. 28,911/CR1/63–78. 28,912/CR1/93–98; Trial Defense Exhibit 1; *See also* Supplemental Clerk's Record in both cases. Venire member 6 served on the jury and had also served as a prior juror in a civil case, yet Appellant did not use a strike on him. *Id*.

14

Appellant also did not strike venire member 50 who had served on both civil and criminal juries. *Id.* Although Appellant did use a strike against venire member 15 (who was later re-instated to the jury) he did not strike her because she had previously served on a criminal jury. *Id.*; RR3/87–88. Appellant also stuck venire member 41 but did not use her prior service on a criminal jury as a reason for striking her. RR3/89, lines 20–24.

As further proof that Appellant's excuse for striking venire member 35 because she previously served on a jury was pretextual- the trial court had the jury cards/questionnaires from the venire panel in this case on January 27, 2014. 28,911/CR1/60–75. 28,912/CR1/63–78. *See also* Supplemental Clerk's Record in both cases. The following panel members were not struck by Appellant and served on the jury even though they had prior jury service: 1) venire member 6; and 2) venire member 27. Furthermore, venire member 11 had prior jury service and was not struck by Appellant.

**5. Appellant's proffered neutral reason for striking Venire Member 41 was clearly pretextual because counsel chose not to call the panel member and ask if she even knew about the incident at Blockbuster.**

The reason Appellant claimed to exercise a peremptory strike against venire member 41 was that: 1) she looked familiar; and 2) Appellant's counsel thought at first that he might have had negative dealings with her at Blockbuster but then said she may have just been in the store when the confrontation occurred. RR3/89,

15

lines 20–24 and 98, lines 16–21. When the State challenged that the venire member 41 was a forty-one year old female who did not even know Appellant's counsel based on her answers at voir dire, Appellant qualified his response stating that he did not know if she was the one who he confronted or if she was there at all when this occurred. RR3/59–60 and 98, lines 16–21. Appellant's counsel could not say this panel member was directly involved in his encounter at Blockbuster and when given the opportunity to ask the venire member questions to establish if she was there, Appellant's trial counsel declined. RR3/98, lines 22–24.

### 6. Appellant's proffered neutral reason for striking Venire Member 48 were pretextual in that he did not strike all members who lived in Quinlan.

Appellant explained that venire member 48 was struck because she lived in Quinlan, the town where the offense occurred. RR3/99, lines 9–12. The State argued that: 1) venire member 48 was a forty-eight year old female; 2) when the panel was addressed, this venire member did not state that she knew the parties, victim, or any information about the case; and 3) venire member 19 was from Quinlan and served on the jury without being struck by Appellant. RR3/28–29, 59–60, and 99, lines 2–16.

The State has previously shown that Appellant's claim of striking venire member 48 because she lives in Quinlan is pretextual. *Supra* Section B(4).

### C. Based upon the evidence presented, arguments, the court's record, and voir dire, the trial court found that Appellant

16

**purposefully discriminated against six of the female venire members when he exercised peremptory strikes to keep them off the jury because of their gender.**

The trial court took judicial notice that the prior jury selected in this case was comprised mainly of men. RR3/90, lines 22–25. In fact, the jury from the week before consisted of nine men and four women (including the alternate). 28,911/CR1/60–75. 28,912/CR1/63–78. *See also* Supplemental Clerk's Record in both cases. Furthermore, the reasons provided by Appellant for striking female jurors were obviously pretextual in that other jurors with the same criteria were not struck by the defense. *See supra* Section B. Specifically, the excuse of striking potential jurors because they were in the health care field had no merit because three venire members from the February 3rd panel had the same criteria as did three jurors and two venire members from the January 27th panel and none of them were struck by Appellant. *Id*. 12

Appellant's excuse of striking panel members because they had family members in law enforcement had no credence when there were three jurors and five other panel members in the February 3rd panel as well as two jurors and one venire member in the January 27th panel who were in the same situation but were not struck by Appellant. *Id*.

Appellant's excuse of striking panel members because they lived in Quinlan also did not hold up when compared to the other panel members who lived in

17

Quinlan and were not struck by Appellant. *Id.* On the February 3rd panel there was one juror and one venire member who lived in Quinlan and were not struck by Appellant. *Id.* On the January 27th panel there were three jurors who lived in Quinlan but were not struck by Appellant. *Id.*

Appellant's excuse that he struck potential jurors because of prior jury service had no merit when multiple other panel members had served on juries but were not struck by Appellant. *Id.* From the February 3rd panel one juror and three venire members had prior jury service. *Id.* Two of those venire members were struck by the defense but for other reasons. *Id.* During the January 27th panel two jurors and one venire member had prior jury service and were not struck by Appellant. *Id.*

Based upon all the evidence, arguments, voir dire and court's record, the trial court found a "series of deliberate and intentional discrimination based on these prospective jurors being female." RR3/99, lines 17–20. The court then denied Appellant's discriminatory use of peremptory strikes against venire members 5, 8, 15, 35, 41 and 48. RR3/99, lines 17–25. These venire members were re-instated to the panel and venire members 5, 8, 15, and 35 made it on the jury. 28,911/CR1/75; 28,912/CR1/78.

### STATE'S RESPONSE TO POINT OF ERROR SEVEN

**Neither the parties, nor the trial court viewed the documents marked as Appeal Defense exhibit 2; therefore, Appellant's**

18

**counsel could not have made any argument based off those documents and did not commit ineffective assistance of counsel.**

## Argument and Authorities

In order to prevail on a claim that counsel was ineffective, appellant must prove that: (1) his counsel's representation was deficient; and (2) the deficient performance was so serious that it prejudiced his defense. That is, appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. See *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

The review of counsel's representation is highly deferential, and the Court should indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689. The burden is on the appellant to overcome that presumption by identifying the acts or omissions of counsel that are, alleged to have constituted the ineffective assistance and to affirmatively prove that they fall below the professional norm or reasonableness. *Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998). Additionally, appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on

the proceedings is inadequate to prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 693.

In evaluating the first prong of the *Strickland* inquiry, appellant must rebut the presumption that counsel's representation was competent by proving that the challenged assistance was not sound trial strategy; *Kimmelan v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed. 305 (1986) (citing *Strickland*, 466 U.S. at 688-689); *Johnson v. State*, 959 S.W.2d 230, 236-237 (Tex.App.-Dallas 1997, no pet.). The court must not second-guess through hindsight the strategy of counsel at trial; nor should the fact that another attorney might have pursued a different course of action support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). The fact that another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not indicate that the trial attorney was ineffective. *Id*.

An ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). In this case, Appellant can not cite to any properly marked portion of the trial record as proof of deficient performance. The documents marked as Appeal Defense Exhibit 2 were not viewed by the trial court or the parties in making a decision on strikes for this case. SRR1 pp. 18–27. They were not used to support either the Batson claim, nor

the trial court's findings, nor Appellant's trial counsel's use of peremptory strikes or gender neutral reasons for striking potential jurors. *Id.*

The correct documents are jury cards/questionnaires prepared by the Hunt County District Clerk's office and offered by Appellant's trial counsel as Defense Exhibit 1. There are no notations by venire member 35 that anyone in her family was a victim of crime on the corrected Defense Exhibit 1; therefore, there is no showing that Appellant's trial counsel performed deficiently and no proof from the record to support Appellant's claim of ineffective assistance of counsel.

### A. Both parties agreed not to review the documents in Appeal Defense Exhibit 2 as they were not provided to the parties until after both sides had already exercised peremptory strikes.

Trial counsel for both sides made the strategic decision not to review the documents in Appeal Defense Exhibit 2. SRR1 p.27, lines 8–19. Both parties agreed to forgo any potential information that may have benefited or hindered either party from the documents in Appeal Defense Exhibit 2. Id. As each party gave up the same right of access and information, trial counsel made a strategic decision and chose not to make the items in Appeal Defense Exhibit 2 part of the trial record because they were not reviewed by the parties or the trial court and not used in the case at all. SRR1 pp.18–27.

### B. Appellant's trial counsel was not ineffective because he stated the reasons he exercised a peremptory strike against venire

**member 35 and there is no showing that the outcome of the case would have been different as venire member 35 stated that she would be a fair and impartial juror in this case.**

Appellant's counsel gave the trial court his reasons for using a peremptory strike against venire member 35. RR3/89, lines 1–16. The panel members were directly asked numerous times by the trial court and attorneys if they could be fair and impartial in this case and venire member 35 implied that she could serve as a fair and impartial juror. RR3/23–29; 47–50, and 74–76. Furthermore, the trial court specifically ask the panel members if any of them had an experience that would prevent them from being fair and impartial in an aggravated sexual assault case and venire member 35 did not raise her hand or speak out. RR3/25–26.

Finally, there is nothing in the voir dire or in her answers that shows venire member 35 would hold her sister's prior experience against Appellant. RR3/6–84. Even when appellate counsel tried to get Mr. Fredrick Shelton, trial counsel, to state that if he viewed the information in Appeal Defense Exhibit 2 regarding juror 35 would have made a difference at trial, Mr. Shelton indicated that he did not know if the information would have made a difference and that trying to predict a different outcome would be "speculation." SRR1/p.22, lines 10–14. There is nothing in the record to show that trial counsel was deficient in his performance. Furthermore, there is nothing to show that the outcome of the trial would have been different.

Therefore, Appellant's point of seven should be denied and Appellant's sentences affirmed.

PRAYER

The State prays that the Court will affirm Appellant's sentences.


Respectfully submitted,


**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas


__/s/ Keli M. Aiken_____
**KELI M. AIKEN**
Assistant District Attorney
P. O. Box 441
4th Floor, Hunt County Courthouse
Greenville, TX 75403
State Bar No. 240434482
(903) 408-4180
FAX (903) 408-4296

**CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT**

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney or record certifies that Appellants Brief contains 14-point typeface of the body of the brief and contains 4,949 words, and was prepared on Microsoft Word 2007.

**\_\_/s/ Keli M. Aiken_____**
KELI M. AIKEN
First Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX 75403
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

**CERTIFICATE OF SERVICE**

A true copy of the State's brief has been emailed to Nancy Kennedy,

Appellant's attorney, today February 2, 2015, pursuant to local rules.

**\_\_/s/ Keli M. Aiken_____**
KELI M. AIKEN
First Assistant District Attorney